RUTH PETERS *vs.* UNITED ELECTRIC RAILWAYS CO.

APRIL 26, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This is an action of trespass on the case for negligence. The jury returned a verdict for the plaintiff for $8,000. The defendant moved for a new trial and the

trial justice ordered a remittitur of $1,500 which was duly filed. The case is here on defendant's exceptions as follows: to the admission and exclusion of evidence; to the refusal to instruct the jury as requested; to the denial of defendant's motion for a direction of a verdict and to the denial of defendant's motion for a new trial.

The accident happened at 7:30 p. m. on December 23, 1930, near the corner of East avenue and Dryden avenue in the city of Pawtucket. East avenue leads northerly toward the center of Pawtucket and southerly toward the city of Providence. Beginning at the northerly corner of Dryden avenue, East avenue deflects in a curve to the left. At the place of the accident said avenue is a crowned road with a pitch of about four per cent down from the middle of the road toward the east curbing. On the day of the accident a snowstorm, continuing from early morning until late afternoon, had caused the pavement to become very slippery. In the vicinity of the bus stop snow, pushed aside by snow plows, completely covered said east curbing.

Plaintiff, a woman twenty-nine years of age, and a younger sister were standing beside the pole designated as a bus stop close to the easterly curbing, waiting for the bus to come from Providence. As the bus approached, its left side was near the center of the road. When the front of the bus reached a point about opposite the bus stop, the driver turned the front wheels to the right toward the easterly curbing. The plaintiff and her sister, seeing the bus turn and realizing that it would not stop at the place where they were standing, walked behind the pole toward the place where the bus seemed about to stop. Just before it stopped it skidded a few feet and the right rear wheel slid against the curb. At the same time the plaintiff fell to the ground and received certain injuries. She contends that while she was standing on the sidewalk she was hit by the overhang of the bus and was thrown to the ground. The bus was not equipped with chains, but no claim of improper equipment was alleged.

When the bus stopped, its rear end was ten or twelve feet beyond the pole at which the plaintiff had been standing. No wheel of the bus went upon the sidewalk.

The declaration is in one count and the negligence charged is stated as follows: "Yet the said defendant corporation, its servants and agents, notwithstanding its duty in the premises so recklessly, carelessly and negligently operated, managed and controlled its said automobile bus that it collided with and struck said plaintiff."

It will be noted that in the declaration no definite act of negligence is specified; and the defendant contends that there is no evidence from which the jury were warranted in finding it guilty of any negligent act. We are unable to ascertain from the record what was the negligent act—unless it was driving without chains—of which the jury and trial justice found the defendant guilty. The declaration contains no allegation of improper equipment and the uncontradicted testimony upon the point is to the effect that chains are not proper equipment for busses.

The operator of the bus testified that when he was 150 or 200 feet away from the pole he saw the plaintiff and her sister standing there; that considering the conditions—namely a slight downward grade, a slippery pavement, snow banked against and over the curb, the slope of the street toward the curb and the curve of the street to the left—he decided not to head the bus straight toward the pole lest it skid upon the sidewalk and injure the two women; that when he was about opposite the pole, having already reduced the speed of the bus by gradually applying the foot brake slightly and leaving the clutch engaged in order not to lose control, he turned the front wheels toward the right curb and proceeded in that direction at about 4 miles per hour; that as he reached the gutter the rear end of the bus slid sideways two or three feet, bringing the right rear wheel against the curb, and that the bus in the meantime rolled forward a few feet.

The plaintiff argues that the driver did not see her and her sister until he was opposite to the pole and that therefore he could not have planned as carefully as he testified he did. There is very little to support this argument. However, it is of no importance what the driver's motives were, if what he did was not negligent. What did he do that was negligent?

If the plaintiff is to recover, some evidence pointing to a negligent act, and sufficient to establish it, must be adduced. Much stress has been placed upon the fact that the bus was operated without chains. We have already considered this argument. Plaintiff testified that she saw the driver of the bus "reach for something and then give a sharp turn." There is no evidence that what he did either in reaching or in turning was negligent. Plaintiff testified that she observed the bus driver and saw what he did. She now contends that his conduct was negligent in spite of the fact that, although she knew of the slippery conditions as well as he did, she did not at the time, after observing the speed of the bus and the conduct of the operator, consider it necessary to take any precautions for her own safety, but on the contrary moved from a position of safety to one of danger. There is no evidence that the brakes were suddenly applied, thereby causing the bus to skid. There is no evidence tending to show excessive speed when the bus was approaching the pole. Most of the witnesses testified that the bus was proceeding slowly, at a speed which they variously estimated to be from ten to fifteen miles per hour. According to plaintiff's witness Larson the speed might have been as low as fifteen miles an hour. Plaintiff's witness Freeberg testified that the bus "wasn't travelling fast" but was going at a "reasonable rate of speed" and was "barely moving along when it started to skid." In direct examination plaintiff's witnesses Larson and Freeberg testified that the speed of the bus as it approached the pole was twenty-five miles per hour; but when their sworn statements to the defendant were produced each admitted

that his statement to the defendant was correct. The sworn statement of the witness Freeberg contains language as follows: "It wasn't travelling fast and as it was slowing for a stop the rear end slid over and either hit the curbing or pole, stopping in about five feet after hitting something. . . . It was slippery, snow and ice on the road, speed of bus had been reduced considerably before the skid took place. Bus was only just moving when the rear end started to skid." The testimony of witness Larson, after he saw his sworn statement to the defendant, was substantially the same as that of Freeberg. Independently of the above quoted statement, Freeberg testified that the bus was barely moving when it commenced to skid. The testimony was to the effect that under such conditions it is good operation to keep the clutch engaged and not attempt to shift to a lower gear. There is no evidence that the brakes were applied so suddenly as to lock the wheels. The question as to speed when the bus was approaching the pole is not so important as the question of speed shortly before the bus commenced to skid. The witnesses described the bus as "going slowly" or "moderately" or "barely moving" at that time. One witness testified that the bus skidded "its length." This statement is ambiguous and must be taken to mean that while the bus was skidding it moved forward the distance of its length. The bus was thirty feet long, the street was only about 40 feet wide, and the bus had been proceeding in the center of the street. We fail to find any evidence tending to show that the bus skidded sideways more than two or three feet before the rear wheel came in contact with the curb. Thereafter the bus moved slightly forward. The jolt was too slight to affect the passengers in the bus. Some of them did not notice it at all. We find no evidence showing improper operation in any particular.

The fact that a motor vehicle skids on a highway which is slippery is not evidence in and of itself that the vehicle was negligently handled, nor does the fact of skidding call for

the application of the doctrine of *res ipsa loquitur*. It is universally recognized that a motor vehicle may begin to skid and get beyond the control of the driver, although prior to the skidding the vehicle may have been operated with due and proper care. *Byron* v. *O'Connor*, 153 Atl. (Me.) 809; *Springs* v. *Doll*, 197 N. C. 240; *Moir* v. *Hart*, 189 Ill. App. 566; *Rango* v. *Fennell*, 168 N. Y. Supp. 646; *Lawrence* v. *Butler*, 79 Cal. App. 436; *Hammond* v. *Hammond*, 227 N. Y. App. Div. 336; *Bartlett* v. *Town Taxi, Inc.*, 263 Mass. 215; *Tucker* v. *City & County of San Francisco*, 290 Pac. 924; *Hatch* v. *Robinson*, 99 Pa. Super. Ct. 141; *Cartwright* v. *Boyce*, 8 Pac. (2nd ed.) 968; *Philpot* v. *Fifth Ave. Coach Co.*, 142 N. Y. App. Div., 811; *Linden* v. *Miller*, 172 Wis. 20; *Siegl* v. *Watson*, 181 Wis. 619; *Heidt* v. *People's Motor Bus Co.*, 219 Mo. App. 683.

The exception to the refusal to direct a verdict for the defendant is sustained; it therefore becomes unnecessary to consider the other exceptions.

The plaintiff may, if she shall see fit, appear on the third day of May, 1933, and show cause, if any she has, why the case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

SWEENEY, J., dissenting. I dissent from the portion of the opinion which states: "We find no evidence showing improper operation (of the bus) in any particular" and which sustains defendant's exception to the denial of its motion for a directed verdict.

The trial justice instructed the jury that the mere skidding of the bus was not negligence in itself, and left it for them to determine from the facts and circumstances in evidence whether the skidding was caused by the negligent operation of the bus. This statement of the law is in accord with the law as stated in this opinion. In the recent case of *Spain* v. *Oikemus*, 278 Mass. 544, the court said: "The mere skidding of an automobile is not evidence of the negligence of its driver. But skidding may occur in connection with other acts of omission and commission in such circumstances as to support a finding of negligence."

Are there any facts and circumstances in evidence in this case from which the jury could reasonably find that the plaintiff was struck by the bus on account of its negligent operation? The jury found there was such evidence and the trial justice has approved their verdict in a carefully prepared rescript in which he said: "The jury apparently did not believe the defendant's (the bus operator's) explanation and was amply justified in doing so."

Some of the facts in evidence tending to support the verdict are as follows: Plaintiff and her sister were standing on the sidewalk close to the bus stop waiting for the bus. They testified that they saw it coming fast down-grade near the center of the road until, when it was about opposite them, the driver turned it toward the sidewalk. Plaintiff testified that the turn was "sharp" and her sister that it was "swift". The driver testified that he drove the bus toward the right-hand curb very slowly. Mr. Larson testified that he was in the rear seat on the right-hand side of the bus; that he suddenly felt the bus slow down and start to slide into the right-hand curbing; that the rear of the bus hit the plaintiff and that, just before the accident, the bus seemed to be going about 25 miles an hour. Mr. Larson's companion, Freeberg, testified that the bus was going 20 to 25 miles an hour; that he noticed a sudden movement by the driver and that the rear of the bus skidded toward the curbing. These two witnesses made statements to defendant's agent about six months after the accident. In Larson's statement it appears that he said the bus was traveling 15 to 20 miles an hour. In Freeberg's statement he said the speed of the bus had been reduced considerably before the skidding occurred. The statements made by these witnesses are not conclusive but are to be considered in appraising their testimony as to the speed of the bus.

In the opinion it is said: "One witness testified that the bus skidded 'its length'. This statement is ambiguous and must be taken to mean that, while the bus was skidding, it moved forward the distance of its length." The witness

Larson was asked by defendant's attorney on cross-examination: "How soon did the bus stop after it began to skid? What distance did it cover? A. Well, I should say it slid pretty near the length of the bus before it hit Miss Peters, then he went down near the corner so I can't say how many feet, because I don't know." If there is any ambiguity in this answer, its meaning is a question for the jury and not for this court.

The width and down-grade of the highway, its icy and slippery condition, the speed of the bus, the sudden application of its brakes, the sharpness of its turn toward the sidewalk and the distance it skidded were all circumstances to be considered by the jury in determining whether the plaintiff was injured by the negligent operation of the bus.

On a motion to direct a verdict this court has repeatedly held that, if there is any evidence to support a plaintiff's right of action, the case must be submitted to the jury and that all reasonable inferences deducible from the evidence which are favorable to plaintiff must be considered. *The Morris Plan Co.* v. *Firemen's Fund Ins. Co.*, 49 R. I. 159; *Rooney* v. *U. E. Rys. Co.*, 47 R. I. 478; *Jacobs* v. *U. E. Rys. Co.*, 46 R. I. 230. Applying this rule to the facts in evidence it clearly appears to me that the trial justice was required to submit the case to the jury and that he did not err in denying defendant's motion for a directed verdict.

HAHN, J., concurs in the opinion of SWEENEY, J.

*Hogan & Hogan, Laurence J. Hogan*, for plaintiff.

*Clifford Whipple, Earl A. Sweeney*, for defendant.